16 F.3d 1221
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES, Plaintiff-Appellee,
v.
Fadi CHAHINE, Defendant-Appellant.
 No. 92-2277.
 United States Court of Appeals, Sixth Circuit.
 Jan. 27, 1994.
 
 Before: KEITH and JONES, Circuit Judges; and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-Appellant, Fadi Chahine, appeals his jury conviction for distribution and possession with intent to distribute heroin. For the reasons stated herein we AFFIRM.
 
 I.
 
 2
 A federal grand jury indictment was returned against Chahine, charging him with three counts of heroin distribution, and one count of possession with intent to distribute heroin, all in violation of 21 U.S.C. Sec. 841(a)(1). The indictment was based in large part on the testimony of government witness Lee Koury.
 
 
 3
 Chahine and Koury met during their detention at a halfway house in Detroit. Chahine was serving time for a prior offense involving the failure to report monetary instruments in excess of $10,000. Koury was being held for jumping bond. This bond jumping charge arose out of a 1984 indictment on drug charges. Following his indictment, Koury fled the country, returning to his place of birth, Lebanon. When Koury re-entered the country in 1989, he entered into an agreement, wherein the United States government agreed not to prosecute his drug offenses.
 
 
 4
 Following their release from the halfway house, Chahine contacted Koury by telephone and arranged a meeting at Koury's place of employment. The purpose of this meeting was to determine whether Koury had any contacts who might be interested in purchasing heroin from Chahine. Koury indicated that he was not interested in discussing drugs. Despite Koury's lack of interest, Chahine stated that he would drop by Koury's home later that evening.
 
 
 5
 Koury, fearing the possibility of being found with drugs, delayed Chahine's visit and contacted a friend for help. This friend introduced Koury to Mark Thomas, an agent with the Drug Enforcement Administration ("DEA"). Koury met with Thomas for the first time on January 1, 1992, and an investigation of Chahine began.
 
 
 6
 Chahine once again contacted Koury indicating a continuing desire to sell heroin. Koury told Chahine to drop off a sample of the heroin at his home in Dearborn, and then contacted Thomas. The sample was retrieved by Thomas from Koury's coffee table and was found to contain .09 grams of heroin. Chahine agreed to return later with 100 grams of heroin, if the potential "buyer" found the sample to be acceptable. The purchase price was $17,000. However, this sale was called off by Thomas after it became dark.
 
 
 7
 On January 6, 1992, a second transaction was scheduled. The sale of 50 grams of heroin was negotiated at a price of $9,000. The exchange transpired at a Union 76 gas station that Thomas had selected. Unbeknownst to him at the time, Thomas exchanged $9,000 for an envelope containing 29.7 grams of heroin, not the amount for which Koury had previously negotiated.
 
 
 8
 The second successful buy was scheduled by Chahine when he called Koury the following day. Although Chahine indicated that he was interested in a 100-200 gram exchange, Thomas told Koury to negotiate for a 50 gram amount. This exchange was scheduled for January 13, 1992, at the Union 76 station used in the prior deal. This sale actually involved 64.6 grams of heroin in exchange for $7,800.
 
 
 9
 Chahine suggested a third transaction in the amount of 250 grams. The scheduled date of this transaction was January 22, 1992, at Chili's restaurant in Detroit. Khoury and Chanine met in the parking lot. Chahine parked, Koury then entered the car and was shown the heroin, which was in a white envelope. Koury, who this time was outfitted with a transmitter, signalled to DEA agents who were monitoring the exchange. Chahine was arrested. Two separate packages of heroin were seized from his car, one located beneath the driver's seat, and the other secreted between the console and the driver's seat.
 
 
 10
 A jury found Chahine guilty on all four charges on July 29, 1992. He was sentenced to 84 months incarceration and four years supervised release. This appeal followed.
 
 II.
 
 11
 Defendant Chahine first asserts that the lower court impermissibly limited his cross examination of government witness Koury. We use an abuse of discretion standard when considering the trial judge's limitation of cross-examination. Dorsey v. Parke, 872 F.2d 163, 166 (6th Cir.), cert. denied, 493 U.S. 831 (1989). A trial court has abused its discretion if a reviewing court has a definite and firm conviction that an error has been made. In re Benedectin, 857 F.2d 290, 307 (6th Cir.1988), cert. denied, 488 U.S. 1006 (1989).
 
 
 12
 While Chahine does have a constitutional right to cross-examination, this right is not absolute. Instead, it is subject to appropriate limitation by the trial judge. United States v. Medina, 992 F.2d 573, 578 (6th Cir.1993). In turn, the right of a trial court to limit cross-examination is itself subject to constraints. A lower court is prohibited from restricting cross-examination in such a way as to impede the defense's ability to place facts before the jury which might allow an adverse witness' bias to be inferred. Dorsey, 872 F.2d at 166-167. Accordingly, where a trial judge has limited the extent, and not the occurrence, of cross examination on a particular subject, "the test ... is whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory. 'Once cross-examination reveals sufficient information to appraise the witness' veracity, confrontation demands are satisfied.' " Id. at 167 (quoting United States v. Falsia, 724 F.2d 1339, 1343 (9th Cir.1983)).
 
 
 13
 In United States v. Atisha, 804 F.2d 920 (6th Cir.1986), cert. denied, 479 U.S. 1067 (1987), we considered a lower court's restriction of the defense's cross-examination. There we found that the lower court had not abused its discretion in limiting the cross-examination because the "testimony which would have been adduced at trial was [not] relevant to the issues of bias, prejudice or motive for testifying." Atisha, 804 F.2d at 929.
 
 
 14
 The same conclusion is warranted here. In the instant case, Chahine argues that the lower court abused its discretion by refusing to allow detailed cross-examination on two subjects--the 1989 plea agreement and the 1984 indictment. However, a review of the transcript reveals that the defense was permitted to question Koury regarding the existence of a plea agreement and other relevant subjects. While the existence of the agreement was unquestionably relevant to issues of bias, prejudice, and motive, additional questions regarding the specifics of either the agreement, or of the 1984 indictment which gave rise to that agreement, were not.
 
 
 15
 Chahine further asserts that questioning Koury with respect to the details of the 1984 indictment would have permitted him to discredit Koury's testimony regarding his previous drug involvement. However, questions concerning Koury's 1984 indictment would not have undercut the credibility of Koury's prior testimony. Koury testified on direct that he had not used drugs since 1983. This testimony would not have been contradicted by the introduction of his 1984 indictment for distribution of heroin. Thus, the trial court's decision to limit cross-examination was not an abuse of discretion.
 
 
 16
 Chahine also alleges that the lower court erroneously restricted cross-examination by limiting the defense's ability to discover the identity of the "friend" who introduced Koury to Agent Thomas. During the cross examination of Koury, the defense asked the name of the "friend" who had introduced him to Thomas. The government objected on the grounds of confidentiality and possible retaliation.
 
 
 17
 In United States v. Straughter, 950 F.2d 1223 (6th Cir.1991), cert. denied, 112 S.Ct. 1505 (1992), we addressed the issue of the government's duty to reveal the names of confidential sources. There the court relied on Roviaro v. United States, 353 U.S. 53 (1957), to find that disclosure of the identity of the confidential source was not required where "the public interest in protecting the flow of information to the government outweigh[ed] the defendant's need for disclosure." Straughter, 950 F.2d at 1232.
 
 
 18
 In United States v. Sims, 975 F.2d 1225, 1239 (6th Cir.1992), cert. denied, 113 S.Ct. 1315 (1993), we once again considered the need for the disclosure of confidential sources, and found that disclosure was unnecessary where an in camera discussion with the witness revealed "that the informant did [nothing] more than introduce [the government witness] to Officer Brown." See also United States v. Whitley, 734 F.2d 1129, 1138 (6th Cir.1984).
 
 
 19
 In the instant case, Koury testified that the confidential source merely introduced him to Agent Thomas. J.A. at 166-68. No evidence was introduced indicating that any greater role was played by this individual. Accordingly the trial court did not abuse its discretion by finding that the identity of the informer did not need to be revealed.
 
 III.
 
 20
 Chahine further alleges that the trial court erred in submitting his entrapment defense to the jury. His position is that he was entitled to the defense as a matter of law. For this court to find that a defense of entrapment exists as a matter of law:
 
 
 21
 the testimony and facts must be undisputed; a court may not choose between conflicting testimony or make credibility determinations. Furthermore, the undisputed evidence must demonstrate a 'patently clear' absence of predisposition. If either of these elements is missing, then the predisposition question is for the jury to decide.
 
 
 22
 United States v. Barger, 931 F.2d 359, 366 (6th Cir.1991) (quoting United States v. Pennell, 737 F.2d 521, 534 (6th Cir.1984), cert. denied, 469 U.S. 1158 (1985)).
 
 
 23
 In the instant case, there was substantial disagreement regarding the facts. Koury testified that he had been approached by Chahine, who was attempting to establish a contact to whom he might sell heroin. In addition, Koury testified that Chahine was the instigator of the drug sales to Agent Thomas. See e.g., J.A. 163-166, 169, and 173-189. Defendant Chahine, in contrast, testified that Koury had introduced the idea of heroin sales to him while the two were detained at the halfway house. See e.g., J.A. at 35-37, and 39-41. This is not the "undisputed evidence demonstrating a patently clear absence of predisposition" that is required to make a lower court's decision to submit the entrapment issue to the jury an abuse of discretion. Therefore, the district court did not err in finding that the question of Chahine's entrapment defense most appropriately belonged in the hands of the jury.
 
 IV.
 
 24
 Chahine also asserts that the government's behavior in this case was so egregious as to rise to the level of a due process violation. Specifically, he asserts that the government's behavior entrapped him. Chahine did not raise this issue in the lower court.
 
 
 25
 In United States v. Chalkias, 971 F.2d 1206, 1212 (6th Cir.), cert. denied, 113 S.Ct. 351 (1992), this court found that:
 
 
 26
 [u]nder the contemporaneous objection rule, failure to lodge an objection during the trial constitutes a waiver of any objection on appeal, absent plain error. Plain error is an error that "seriously affects the fairness, integrity or public reputation of judicial proceedings." The plain error exception to the contemporaneous objection rule is to be used sparingly and only to prevent a miscarriage of justice.
 
 
 27
 (Citations omitted). See also United States v. Meyers, 952 F.2d 914, 917 (6th Cir.), cert. denied, 112 S.Ct. 1695 (1992); United States v. Crismon, 905 F.2d 966, 969 (6th Cir.1990) (objections not presented to the lower court are deemed to be waived).
 
 
 28
 Chahine has not asserted that a failure to review this claim would result in a miscarriage of justice; nor are we able to see that it would do so. Consequently, this court will not further address this claim as it has been waived.
 
 V.
 
 29
 Chahine's fourth claim is that the lower court abused its discretion by refusing to include the word "coercion" in the jury instruction. We are only required to find for Chahine if his proposed instruction was "1) a correct statement of the law, 2) not substantially covered by the charge actually delivered to the jury, and 3) concern[ed] a point so important in the trial that the failure to give it substantially impair[ed] the defendant's defense." United States v. Williams, 952 F.2d 1504, 1512 (6th Cir.1991). Furthermore, "[i]t is not error to fail to use the language requested by the parties if the instruction as given is accurate and sufficient." United States v. Horton, 847 F.2d 313, 322 (6th Cir.1988).
 
 
 30
 The instruction given by the trial judge was an accurate declaration of the law. 2 Stephen Saltzburg & Harvey Perlman, Federal Criminal Jury Instructions Sec. 73.01 (1990). See also United States v. Campbell, 874 F.2d 838, 843-44 (1st Cir.1989) (finding that similar jury instruction constituted accurate description of entrapment defense). Chahine has cited to no case law indicating that the word "coercion" must be used in jury instructions on entrapment for such instructions to constitute an accurate statement of the law.
 
 
 31
 Moreover, if a defendant, as in this case, has failed to object to a given jury instruction, "this court will not address the question on appeal unless there exists an obvious and prejudicial error." United States v. Clark, 988 F.2d 1459, 1468 (6th Cir.), cert. denied, 114 S.Ct. 105 (1993); see also United States v. Hatchett, 918 F.2d 631, 643 (6th Cir.1990), cert. denied, 111 S.Ct. 2839 (1991) ("Where a party fails to object at trial, reversal is required only in those exceptional circumstances where necessary to avoid a miscarriage of justice."). No such error exists here. Accordingly, the lower court did not err in refusing to adopt the specific language proposed by the defendant.
 
 VI.
 
 32
 Finally, Chahine asserts that a two-point deduction should have been awarded to him for his minor participation in the crime. A district court's decision not to reduce a defendant's sentence by two points for minor participation is a discretionary task that may be reversed only for clear error. United States v. Perry, 908 F.2d 56, 58 (6th Cir.) cert. denied, 498 U.S. 1002 (1990). " 'To be clearly erroneous,' as the Court of Appeals for the Seventh Circuit has said in a different context, 'a decision must strike us as more than just maybe or probably wrong; it must ... strike us as wrong with the force of a five week old, unrefrigerated dead fish.' " Id. (quoting Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228, 233 (7th Cir.1988), cert. denied, 493 U.S. 847 (1989)).
 
 
 33
 In Sims, we found that "[t]he district court's determination as to role in an offense is a finding that is 'heavily dependent on the facts,' and the defendant has the burden of proving such mitigating factors by a preponderance of the evidence." 975 F.2d at 1242 (quoting Perry, 908 F.2d at 58). Additionally, we have found that to qualify for the two point reduction on appeal, the reviewing court must find that the lower court erred in concluding that the defendant's role was not "substantially less culpable than the average participant." United States v. Nagi, 947 F.2d 211, 215 (6th Cir.1991), cert. denied, 112 S.Ct. 2309 (1992).
 
 
 34
 In the instant case, there was evidence that Chahine was the sole courier in the drug enterprise. He both instigated the sale of heroin, and participated in each delivery. Under these facts, there is no reason to find that the lower court's conclusion was erroneous.
 
 VII.
 
 35
 For the foregoing reasons, we affirm Defendant Chahine's conviction for distribution and possession with intent to distribute heroin.