**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Morgan DOUBLEDAY,**
**Defendant-Appellant.**

No. 85–3169.

United States Court of Appeals,
Ninth Circuit.

Submitted Sept. 3, 1986.

Decided Nov. 19, 1986.

Sally Gustafson, Asst. U.S. Atty., Gene S. Anderson, Seattle, Wash., for plaintiff-appellee.

Michael Martin, Asst. Federal Public Defender, Seattle, Wash., for defendant-appellant.

Before FLETCHER, FERGUSON, and REINHARDT, Circuit Judges.

PER CURIAM:

Defendant, Morgan Doubleday, appeals his convictions for three counts of violating the Lacey Act and one count of using intimidation to threaten a witness. He contends that the district court erroneously denied his motion for judgment of acquittal on the Lacey Act counts and his request for a self-defense instruction on the intimidation count. We affirm the district court.

## I.

In September 1984, the defendant, a fishing boat owner and operator, fished for and caught halibut in an unauthorized fishing area in Alaskan waters, and sold it to a distributor in Bellingham, Washington. In May 1985, while a federal grand jury was investigating the fishing trip, the defendant and Roy Graham, a member of his crew

who was involved in the investigation, were involved in a "scuffle."

On June 19, 1985, the federal grand jury returned an indictment against the defendant charging him with three counts of violating the Lacey Act, 16 U.S.C. §§ 3371–3378—conspiracy to transport and sell halibut taken in violation of the act, transportation of unlawfully taken halibut, and sale of unlawfully taken halibut—and one count of violating 18 U.S.C. § 1512—using intimidation to threaten a witness.

At trial, the defendant requested that the court give a self-defense instruction on the intimidation count. The judge refused, stating that he did not "think there's any evidence at all or any inference of self-defense." The jury convicted the defendant on all four counts. The defendant moved for a judgment of acquittal, claiming that the Magnuson Fishery Conservation and Management Act of 1976, 16 U.S.C. §§ 1801–1882, and not the Lacey Act, regulates halibut fishing in the Gulf of Alaska, and that therefore he could not be convicted under the Lacey Act. The court denied the motion on November 4, 1985, finding that "[t]he [Gulf of Alaska] Plan [promulgated pursuant to the Magnuson Act] does not regulate the fishing of halibut." Defendant timely appealed.

## II.

■■■ The interpretation of a statutory exemption in the Lacey Act is a question of law, reviewed de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). A district court's refusal to give any jury instruction on defendant's theory of the case is reviewed de novo. *United States v. Escobar de Bright*, 742 F.2d 1196, 1201 (9th Cir.1984).[1]

■■■ The Lacey Act prohibits, among other things, the selling of any fish "taken or possessed in violation of any law, treaty, or regulation of the United States." 16 U.S.C. § 3372(a)(1). The Act limits this broad language, however, by excluding certain fishing activities from its coverage:

> The provisions of paragraph (1) of section 3372(a) of this title shall not apply to any activity regulated by a fishery management plan in effect under the Magnuson Fishery Conservation and Management Act (16 U.S.C. § 1801 et seq.).

*Id.* § 3377(a). The legislative history to the Lacey Act states the purpose for creating this exclusion:

> The Committee adopted [section 3377(a)] to avoid the possibility that any action which is regulated by a fishery management plan and enforceable under the terms of the [Magnuson Act], could also be enforceable under the Lacey Act.... The focus of the exception in [section 3377(a)] is, however, on the action involved and *whether it is regulated by a fishery management plan, and not on ... whether [the fish] were subject to [Magnuson Act] regulations.*

S.Rep. No. 123, 97th Cong., 1st Sess. 16–17 (1981), *reprinted in* 1981 U.S.Code Cong. & Ad.News 1748, 1763–64 (emphasis added).

Defendant argues that his activity falls within the section 3377(a) exclusion because the Fishery Management Plan for Groundfish in the Gulf of Alaska (Gulf of Alaska Plan), a management plan under the Magnuson Act,[2] regulates halibut fishing in the Gulf. His argument relies on incorrect interpretations of the statutes and plans involved.

The district court correctly concluded that the Gulf of Alaska Plan does not regulate the activity of fishing for halibut. The Gulf of Alaska Plan clearly states that its coverage does not extend to halibut fish-

---

1. This court has reviewed refusals to give entrapment instructions for abuse of discretion. *See, e.g., United States v. Fleishman*, 684 F.2d 1329, 1342 (9th Cir.), *cert. denied*, 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982). However, the wording in *Escobar de Bright* clearly implies

a de novo review. The result in this case would be the same under either standard.

2. Requirements for such management plans are set forth in 16 U.S.C. § 1853.

ing: "This Fishery Management Plan has been developed by the North Pacific Fishery Management Council and is for the groundfish fishery (excluding halibut) of the Gulf of Alaska." Gulf of Alaska Plan at 2–1, *reprinted in* Appendix to Excerpt of Record. Section 8.2 of the Gulf of Alaska Plan provides:

This Fishery Management Plan and its management regime applies:

. . . .

(B) To all foreign and domestic fishing vessels operating in the area described in (A) above except:

(1) The taking of halibut by United States and Canadian vessels which are operating under International Pacific Halibut Commission regulations; . . . . (C) To all stocks of squid and finfish— except . . . Pacific halibut . . .—which are distributed or are exploited predominately in the area described in (A) above.

A reading of the overall Plan bears out the district court's conclusion. The Plan exempts the halibut fleet from its extensive licensing requirements and does not regulate the timing or locations of halibut fishing. The Plan recognizes that the Protocol Amending the Convention for the Preservation of the Halibut Fishery of the Northern Pacific Ocean and Bering Sea governs halibut fishing in the Gulf of Alaska: "Fishery restrictions on U.S. nationals are those established by the State of Alaska and those promulgated by the International Pacific Halibut Commission (IPHC) for the taking of Pacific halibut." Gulf of Alaska Plan at 3–25.[3]

The only application of the Gulf of Alaska Plan to halibut is that it prohibits the incidental taking of halibut while fishing for other groundfish. *See* section 8.3.2.-1(B) ("Foreign vessels operating in this fishery must reduce to the minimum their incidental catch of, and may not retain any

of the following species or species groups: . . . (2) Pacific Halibut. . . ."); Table 11.1 ("unallocated species" list includes Pacific Halibut, which may not be retained). The reason for this limited coverage in the Plan is that "[e]ven though the International Pacific Halibut Commission is responsible for management of the North American halibut fishery, the potential adverse impact on halibut of a fishery for other groundfish species is so great that it must be taken into account in the management of the groundfish fishery." Gulf of Alaska Plan at 2–1. Section 8.3.3.4 provides:

This plan has a most significant relationship to the management of the Pacific halibut fishery which continues to be vested in the International Pacific Halibut Commission. Many of the management measures contained herein are for the expressed purpose of mitigating a severe crisis in the domestic halibut fishery by recognizing a situation in which the trawl fishery (and possibly the sablefish setline fishery) could be a major contributor to declining halibut abundance.

*See also* Gulf of Alaska Plan at 3–105 ("The halibut fishery in the Gulf of Alaska is affected by domestic fisheries for shrimp, crab, and groundfish (particular sablefish), and by foreign fisheries for groundfish.").

We read these provisions to cover only this very narrow circumstance: a fisher may not retain any halibut incidentally caught while fishing for other groundfish. Thus, the Plan regulates incidental halibut acquisition and the International Pacific Halibut Commission's extensive regulations apply to fishing for halibut. *See* 50 C.F.R. §§ 301.1–.18 (establishing closed areas, closed time periods, catch limits, size limits, licensing, and gear restrictions for halibut fishing).[4]

---

**3.** Congress enacted implementing legislation for the Protocol in 1982. Northern Pacific Halibut Act of 1982, Pub.L. 97–176, 96 Stat. 78 (codified at 16 U.S.C. §§ 773–773k).

**4.** The defendant contends that the Magnuson Act is the "domestic codification" of the halibut

treaty. We disagree. If this were so, there would have been no reason for Congress to enact the Northern Pacific Halibut Act to codify the treaty. Congress did not codify this legislation as part of the Magnuson Act, but rather as a separate statute. Moreover, the administrative regulations implementing the treaty provisions,

The Gulf of Alaska Plan's implementing regulations make it unlawful to sell any fish taken in violation of the plan, 50 C.F.R. § 672.7(b), and thus cover the sale of halibut. However, the regulations may proscribe only the incidental taking of halibut because the Gulf of Alaska Plan prohibits only that activity.[5]

Thus, the defendant is incorrect when he argues that the management plan prohibited his activity. At most, it regulates the incidental acquisition of halibut. Defendant was not fishing for other groundfish nor was his catch "incidental." The district court correctly concluded that the Lacey Act applies to the defendant's activity.

### III.

 A district court commits reversible error by refusing to instruct the jury on the defendant's theory of the case "if the theory is legally sound and evidence in the case makes it applicable." *United States v. Scott,* 789 F.2d 795, 797 (9th Cir.1986) (citing *United States v. Escobar de Bright,* 742 F.2d 1196, 1201 (9th Cir.1984)). "[T]he evidence supporting a proposed instruction as to a particular defense 'may be weak, insufficient, inconsistent or of doubtful credibility.'" *Escobar de Bright,* 742 F.2d at 1200 n. 7 (quoting *United States ex rel. Peery v. Sielaff,* 615 F.2d 402, 403 (7th Cir.1979), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 794 (1980)) (emphasis omitted). However, for the refusal to be erroneous, the proposed instruction must have some "foundation in the evidence." *United States v. Winn,* 577 F.2d 86, 90 (9th Cir.1978); *see also United States v. Falsia,* 724 F.2d 1339, 1342 (9th Cir.1983) ("A defendant is not entitled to a jury instruction where there is no evidence to support it. . . .").

 The district court properly refused to give the proffered instruction: "Use of force is justified when the person believes with good reason that it is necessary for the defense of that or another person against unlawful force about to be used against one or the other." Model Jury Instructions for the Ninth Circuit 6.05. The defendant presented no evidence to support his claim that Graham was about to use unlawful force against him.

The defendant's only evidence on the defense comes from the testimony of a witness who started only that Graham came into the bar drunk and demanded a drink, and eventually left with the defendant. Defendant presented no evidence that even implied that Graham was about to use any force on the defendant after the two left the bar or at any other time.

### IV.

The Lacey Act regulates halibut fishing in the Gulf of Alaska and was the proper Act upon which to base the defendant's conviction. Furthermore, the defendant was not entitled to a self-defense jury instruction. We therefore AFFIRM the district court.

50 C.F.R. §§ 301.1-.18, derive their authority solely from the Act, 16 U.S.C. §§ 773–773k.

**5.** Any other interpretation would leave the Northern Pacific Halibut Act without an enforcement provision. Under the defendant's interpretation, the Lacey Act cannot enforce any halibut regulations because the Gulf of Alaska Plan triggers the exemption in 16 U.S.C. § 3377(a). If this were true, there would be no legislation that enforces the comprehensive regulatory scheme promulgated under the Convention between the United States of America and Canada for the Preservation of the Halibut Fishery of the North Pacific Ocean and Bering Sea. The Magnuson Act could not enforce the International Pacific Halibut Commission's regulations because those regulations are not part of the Gulf of Alaska Plan.