**UNITED STATES of America, Plaintiff–Appellant,**

v.

**David L. ERTSGAARD, Defendant–Appellee.**

**No. 99–30242.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 2, 2000

Filed Aug. 25, 2000

John L. Smeltzer, U.S. Department of Justice, Environmental and Natural Resources Division, Washington, D.C., for the plaintiff-appellant.

Brian M. Doherty, Anchorage, Alaska, for the defendant-appellee.

Before: D.W. NELSON, REINHARDT, and THOMAS, Circuit Judges.

REINHARDT, Circuit Judge:

The government appeals the district court's pre-trial dismissal of Counts 1 and 2 of a three-count indictment of Appellee David L. Ertsgaard. We reverse.

## I.  Background

Ertsgaard is a commercial fisherman who is licensed to harvest halibut from the Gulf of Alaska. On September 15, 1998, Ertsgaard was indicted for two violations of the Lacey Act, 16 U.S.C. §§ 3371–3378. Count 1 charged that Ertsgaard knowingly submitted a false "Individual Fishing Quota (IFQ) Landing Report" claiming that he had harvested 11,420 pounds of halibut in IFQ Regulatory Area 3A, when in fact he had harvested the fish from Area 3B, in

violation of sections 3372(d)(2) and 3373(d)(3)(A)(ii). Count 2 charged that Ertsgaard had harvested, transported, and sold an additional 11,000 pounds of halibut from Area 3B despite having no remaining quota shares for that area, in violation of sections 3372(a)(1) and 3373(d)(1)(b) and 50 C.F.R. § 679.7(f)(4). A superseding indictment filed on March 17, 1999, added a third count, charging Ertsgaard with making a material false statement in his landing report in violation of 18 U.S.C. § 1001.

Ertsgaard filed a motion to dismiss the indictment and the district court referred the motion to a magistrate. On April 23, 1999, the magistrate judge issued a report recommending that the motion be granted as to Counts 1 and 2 but denied as to Count 3. By order of June 7, 1999, the district court adopted the magistrate's recommendations and dismissed Counts 1 and 2 of the Indictment. This appeal followed.

## II. Analysis

The Lacey Act, under which Ertsgaard was charged, is a general environmental enforcement statute that imposes civil and criminal penalties upon the trafficking in fish, wildlife, or plants obtained in violation of some other provision of federal, state, foreign, or Indian tribal law. 16 U.S.C. § 3372(a). The Act also makes unlawful the submission of false records relating to "any fish, wildlife, or plant which has been, or is intended to be transported in interstate or foreign commerce." 16 U.S.C. § 3372(d)(2). Counts 1 and 2 of the indictment, those at issue in this case, charge Ertsgaard with violating the Lacey Act's prohibitions against trafficking and false labeling.

Section .3377 of the Lacey Act establishes "exceptions" to the Act's coverage, including one for activities "regulated by a fishery management plan in effect under the Magnuson–Stevens Fishery Conservation and Management Act." [1] 16 U.S.C. § 3377(a). Ertsgaard contends, and the district court held, that the specific regulatory provisions that Ertsgaard allegedly violated—that is, the Individual Fishing Quota regulations for halibut—qualify as a "fishery management plan" in effect under the Magnuson–Stevens Act, and therefore fall within the Lacey Act's exceptions. The government argues that the regulations in question were promulgated pursuant to the authority of the Northern Pacific Halibut Act of 1982,[2] not the Magnuson–Stevens Act, that they do not constitute a "fishery management plan," and that consequently the Lacey Act's exemption provision does not apply.

We have previously upheld Lacey Act prosecutions premised on the unlawful trafficking in halibut. In *United States v. Doubleday*, 804 F.2d 1091 (9th Cir.1986), we rejected a claim virtually identical to Ertsgaard's. The defendant in *Doubleday*, like the defendant here, argued that his alleged violations of halibut regulations fell within the Lacey Act's exemptions, because the Individual Fishing Quota regulations in question constituted a "fishery management plan" in effect under the Magnuson–Stevens Act. We held that halibut fishing was not governed by the Gulf

---

1. 16 U.S.C. §§ 1801–1883. The Magnuson–Stevens Fishery Conservation and Management Act contains a broad array of provisions aimed at preserving the nation's "valuable and renewable" fishery resources. 16 U.S.C. § 1801(a). Most pertinent to this litigation, the Act establishes regional fishery management councils, including the North Pacific Fishery Management Council (which covers the Gulf of Alaska), and vests the councils with the authority to develop fishery management plans. 16 U.S.C. §§ 1852(a) and (h), 1853. The regional councils submit the fishery management plans to the Secretary of Commerce, and the Secretary promulgates regulations implementing the plans. 16 U.S.C. §§ 1853(c), 1854(b)(3). The regulations governing the Gulf of Alaska are codified at 50 C.F.R. § 679.

2. 16 U.S.C. §§ 773–773k. The Northern Pacific Halibut Act of 1982 constitutes the domestic codification of a halibut conservation convention between the United States and Canada. 16 U.S.C. § 773(a); *see also United States v. Doubleday*, 804 F.2d 1091, 1094 n. 4 (9th Cir.1986). Halibut conventions between the U.S. and Canada date back to 1923.

of Alaska fishery management plan but by regulations promulgated under the Halibut Act; therefore, the defendant's violations did not fall within the Lacey Act's exceptions. *See id.* at 1095. In *United States v. Cameron*, 888 F.2d 1279 (9th Cir.1989), we rejected the defendant's argument that violations of the Halibut Act could not be prosecuted under the Lacey Act, holding that Congress had intended no exemption similar to section 3377(a) for Halibut Act violations.

*Doubleday* would be directly controlling here but for one distinction: the regulations in *Doubleday* were developed by the International Pacific Halibut Commission, and the regulations at issue in this case were developed by the Northern Pacific Fishery Management Council. However, the fact that different rule-making bodies developed the regulations in question does not lead us to a different conclusion; rather, we again hold that the Individual Fishing Quota regulations for halibut were promulgated under the authority of the Halibut Act, not the Magnuson–Stevens Act.

Ertsgaard contends that because the Northern Pacific Fishery Management Council was itself created by the Magnuson–Stevens Act, any regulations developed by the Council must be "fishery management plans" that are "in effect" under that Act. We disagree. Although it is undisputed that the Northern Pacific Fishery Management Council owes its existence to the Magnuson–Stevens Act, it is no less clear that the Halibut Act vests in the Council the authority and responsibility to develop regulations governing the harvesting of halibut.

Regulation of halibut is principally controlled by convention between the United States and Canada; the convention establishes a body called the International Pacific Halibut Commission and authorizes the Commission to develop regulations governing halibut harvesting in convention waters.[3] However, the Commission is not the sole source of halibut regulations. The Halibut Act expressly provides that the "Regional Fishery Management Council having authority for the geographic area concerned [in this case, the Northern Pacific Fishery Management Council] may develop regulations governing the United States portion of Convention waters ... which are in addition to, and not in conflict with regulations adopted by the Commission." 16 U.S.C. § 773c(c). That is precisely what occurred in this case. The Individual Fishing Quota regulations at issue were first developed by the Northern Pacific Fishery Management Council in 1993. The explanatory notes accompanying the regulations as published in the Federal Register make clear that the Council was acting under the authority of the Halibut Act, not the Magnuson–Stevens Act. *See* 58 Fed.Reg. 59375, 59376 (November 9, 1993) (citing 16 U.S.C. § 773(d)). Moreover, the notes specify that the *"Council does not have an FMP [fishery management plan] for halibut." Id.* (emphasis added). In short, it is the Halibut Act, not the Magnuson–Stevens Act, that vested the Northern Pacific Fishery Management Council with the authority to promulgate the regulations that Ertsgaard allegedly violated.[4]

The district court placed great weight on the fact that 50 C.F.R. § 679, the section

3. *See* 16 U.S.C. § 773(b) and (d); *Protocol Amending the Convention Between the United States and Canada for the Preservation of the Halibut Fishery of the Northern Pacific Ocean and Bering Sea* (1979 Protocol), 32 U.S.T. 2483, 2486–87.

4. This conclusion is strengthened by differences in the geographic scope of the two statutes. The Halibut Act authorizes the Northern Pacific Fishery Management Council to regulate halibut in the "United States

portion of Convention waters." 16 U.S.C. § 773c(c). "Convention waters" are defined by the Halibut Act as "the maritime areas off the coast of the United States and Canada, described in Article I of the Convention." 16 U.S.C. § 773(d). Article I, in turn, explains that the term "Convention waters" encompasses "without distinction areas within and seaward of the territorial sea or internal waters" of each country. *1979 Protocol*, 32 U.S.T. at 2487. Consequently, when the Indi-

that contains all of the regulations applicable to the fisheries off the coast of Alaska, begins with the statement: "Regulations in this part were developed by the Council under the Magnuson–Stevens Act." In the district court's view, the presence of that language in "the most recently enacted federal regulations" governing Alaskan fisheries is persuasive evidence that the Magnuson–Stevens Act provides the statutory authority for the regulations in question. However, in relying on the statement to support the proposition that *all* of 50 C.F.R. § 679 was developed under Magnuson–Stevens Act authority, the court was misled.

Section 679 was created in 1996, when, pursuant to the President's Regulatory Reform Initiative, six sections of the C.F.R. governing Alaskan fisheries were consolidated into a single part for reasons of efficiency and clarity. Included among the consolidated regulations were the Individual Fishing Quota regulations for halibut that had been developed in 1993. The preamble to the consolidated rule makes clear· that "[t]his final rule does not make substantive changes to the existing regulations; rather, it reorganizes management measures into a more logical and cohesive order, removes duplicative and outdated provisions, and makes editorial changes for readability, clarity, and to achieve uniformity in regulatory language." 61 Fed. Reg. 31228 (June 19, 1996). Notwithstanding the introductory statement, section 679 cites the Halibut Act as one of three sources of the compilation's statutory "authority." *See* 50 C.F.R. § 679 (citing 16 U.S.C. § 773 *et seq.* [Halibut Act], 1801 *et seq.* [Magnuson–Stevens Act], and 3631 *et seq.* [Pacific Salmon Treaty Act] ). Section 679's statutory citations are consistent with the view that while most of the consolidated regulations in section 679 were originally developed under the Magnuson–Stevens Act, two other statutes— the Halibut Act and the Pacific Salmon

Treaty Act—provide the authority for some·of them. *See id.* Under these circumstances, we do· not find the blanket introductory statement sufficiently persuasive to overcome the countervailing arguments we have previously set forth—arguments that compel the conclusion that the Individual Fishing Quota regulations for halibut were promulgated pursuant to the authority vested in the Council by the Halibut Act.

We conclude that the district court erred in holding that the Individual Fishing Quota regulations for halibut constitute a fishery management plan in effect under the Magnuson–Stevens Act. Accordingly, Ertsgaard's alleged violations do not fall within the Lacey Act's exemptions and are subject to prosecution under that Act.

### III.   Conclusion

We REVERSE and vacate the district court's order dismissing Counts 1 and 2 of Ertsgaard's indictment and remand for further proceedings consistent with this opinion.

---

vidual Fishing Quota regulations for halibut were developed, the Council made clear that the regulations were applicable to all waters "in and off Alaska." 50 C.F.R. § 679.1(d)(2).

In contrast, the Magnuson–Stevens Act applies to states' internal waters only in limited circumstances not applicable here. *See* 16 U.S.C. §§ 1856(a) and (b).